Gabriel Alfonso **HOLGUIN**, Appellant,

v.

**LAREDO REGIONAL MEDICAL CENTER, L.P. d/b/a Doctors Hospital of Laredo and Juan Morales, Jr.,** Appellees.

No. 04–07–00152–CV.

Court of Appeals of Texas, San Antonio.

Feb. 6, 2008.

Christopher A. Bandas, Bandas Law Firm, P.C., Corpus Christi, TX, for Appellant.

Steven M. Gonzalez, Gonzalez Gaytan, Garza & Castillo, L.L.P., McAllen, TX, for Appellee.

Sitting: KAREN ANGELINI, Justice, REBECCA SIMMONS, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by STEVEN C. HILBIG, Justice.

This is an appeal from an order granting a motion to dismiss for failure to file an expert report as required by section 74.351(a) of the Texas Civil Practice and Remedies Code. We affirm in part and reverse and remand in part.

## BACKGROUND

On June 23, 2006, Gabriel Alfonso Holguin filed suit against Laredo Regional Medical Center, L.P. d/b/a Doctors Hospital of Laredo and Juan Morales, Jr. Holguin claimed that while he was a patient at Laredo Regional he was sexually assaulted by Morales, a nurse employed by Laredo Regional. According to Holguin, prior to the assault he was given medication that caused him to become drowsy and fall asleep. He awoke to find Morales sexually assaulting him. Holguin claimed Morales was negligent in his conduct and Laredo Regional was responsible for that conduct under the doctrine of respondeat superior. He also alleged Laredo Regional was negligent in its own right for failing to protect Holguin from Morales.

On November 3, 2006, Morales and Laredo Regional filed a motion to dismiss claiming Holguin had failed to serve his 120–day expert report as mandated by section 74.351(a) of the Texas Civil Practice and Remedies Code. See TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp. 2007). Holguin filed a response in which he admitted he did not comply with section 74.351(a), but argued he was not required to serve an expert report because he had not asserted any health care liability claims.

The trial court granted the motion to dismiss and entered a judgment dismissing Holguin's "entire cause of action against Defendant Laredo Regional Medical Center, L.P., d/b/a Doctors Hospital of Laredo and Juan Morales, Jr.... with prejudice." Holguin perfected an appeal.

## ISSUE ON APPEAL

In a single issue Holguin claims the trial court erred in granting the motion to dismiss. He argues his claims are not gov-

erned by Chapter 74 of the Texas Civil Practice and Remedies Code because he has alleged "safety claims" that are not "directly related to health care."

## APPLICABLE LAW

### Standard of Review

■ Generally, we review a trial court's order granting a motion to dismiss for failure to timely file a section 74.351(a) expert report under an abuse of discretion standard. *See, e.g., Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001) (applying abuse of discretion standard in review of trial court's decision to dismiss under predecessor statute); *Univ. of Tex. Health Science Ctr. at San Antonio v. Ripley,* 230 S.W.3d 419, 421 (Tex.App.–San Antonio 2007, no pet.). However, when the issue presented requires a statutory interpretation or a determination of whether Chapter 74 applies to a claim, i.e., questions of law, we use a *de novo* standard of review. *NCED Mental Health, Inc. v. Kidd,* 214 S.W.3d 28, 32 (Tex.App.–El Paso 2006, no pet.); *Brown v. Villegas,* 202 S.W.3d 803, 805 (Tex.App.–San Antonio 2006, no pet.). Whether a claim is a health care liability claim is a question of law. *Inst. for Women's Health, P.L.L.C. v. Imad,* No. 04–05–00555–CV, 2006 WL 334013, *1 (Tex.App.–San Antonio Feb.15, 2006, no pet.) (mem. op.).

### Substantive Law

■ Section 74.351(a) requires that, not later than the 120th day after filing suit, a claimant serve on each party or the party's attorney one or more expert reports for each physician or health care provider against whom a claim is asserted. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2007). If a report is not served, the trial court is required upon motion by the affected physician or health

care provider to dismiss the claim with prejudice and award reasonable attorney's fees and costs. *Id.* § 74.351(b). The expert report requirements apply to claims that fall within the statutory definition of "health care liability claim." *See Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 848 (Tex.2005). A "health care liability claim" is defined as:

[A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (Vernon 2005). Whether a claim falls within the definition of health care liability claim requires an examination of the "essence" or "underlying nature" of the claim. *Diversicare,* 185 S.W.3d at 851; *Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 543 (Tex.2004). "A cause of action against a health care provider is a health care liability claim ... if it is based on a claimed departure from an accepted standard of medical care, health care, or safety of the patient, whether the action sounds in tort or contract." *Diversicare,* 185 S.W.3d at 848. "A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services." *Id.* "A cause of action alleges a departure from accepted standards of safety if the act or omission complained of 'necessarily implicate[s] the accepted standards of safety.'" *Emeritus Corp. v. Highsmith,* 211 S.W.3d 321, 327 (Tex.App.–San Antonio 2006, pet. denied) (quoting *Diversicare,* 185 S.W.3d at 855). "Safety" was defined

by the supreme court as "'untouched by danger; not exposed to danger; secure from danger, harm, or loss.'" *Diversicare*, 185 S.W.3d at 855 (quoting BLACK'S LAW DICTIONARY 1336 (6th ed.1990)). The necessity of expert testimony from a medical or health care professional may be a factor in determining whether a claim is an inseparable part of the rendition of health care services. *Diversicare*, 185 S.W.3d at 848. However, the fact that expert testimony may not ultimately be necessary to support a verdict at trial does not necessarily mean the claim is not a health care liability claim. *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex.2005). The expert report requirement is a threshold requirement for the continuation of the lawsuit, not a requirement for recovery. *See id.*

█ When the essence of the suit is a health care liability claim, a claimant cannot avoid the expert report requirements through "artful pleading." *Diversicare*, 185 S.W.3d at 851; *Rose*, 156 S.W.3d at 543. Within these parameters, we determine whether the underlying nature of Holguin's claims are so inextricably interwoven with the rendition of medical care or health care so as to constitute a health care liability claim. *See Rose*, 156 S.W.3d at 546.

### ANALYSIS

Holguin brought suit against Morales alleging he acted negligently in failing "to control his sexual urges" and in "repeatedly physically abus[ing] Plaintiff in a reprehensible, depraved manner." Holguin brought suit against Laredo Regional claiming it was responsible for Morales's conduct under the doctrine of respondeat superior and claiming Laredo Regional was negligent in its own right for failing to properly "investigate the background of, hire, train and supervise its employees, including Defendant Morales."

### Claim Against Morales

█ Holguin's claim against Morales is that Morales sexually assaulted Holguin while he was a patient at Laredo Regional. When we examine the "essence" or "underlying nature" of the claim, it is obvious that the claim against Morales is not a health care liability claim. It would defy logic to suggest that a sexual assault "is an inseparable part of the rendition of medical care" or a departure from accepted standards of health care. *See Diversicare*, 185 S.W.3d at 848; *Rose*, 156 S.W.3d at 544. The facts of this case are similar to those in *Jones v. Khorsandi*, 148 S.W.3d 201 (Tex.App.–Eastland 2004, pet. denied).

In *Khorsandi*, the claimant sought treatment in an emergency room. *Id.* at 206. While he was under the influence of medication, he was allegedly sexually assaulted by a doctor. *Id.* The claimant brought suit against the doctor alleging claims for intentional infliction of emotional distress and assault and battery. *Id.* When the claimant failed to serve the doctor with a 120–day report pursuant to section 74.351(a), the doctor filed a motion to dismiss, which the trial court granted. *Id.* at 202–03. On appeal, the appellate court reversed holding no report was required because the claims were not health care liability claims. *Id.* at 206. The court explained that the nature of the allegations against the doctor "did not involve a breach of the applicable standard of care for health care providers, and the alleged sexual assault is not 'an inseparable part of the rendition of medical services.'" *Id.*; *see also Parker v. CCS/Meadow Pines, Inc.*, 166 S.W.3d 509, 513 (Tex.App.–Texarkana 2005, no pet.) (holding that if hospital employees abused claimant in ways unrelated to course of care or treatment, such as by assaulting him outside of efforts to care for or restrain him, claims based on

such abuse would not be health care liability claims).

Neither *Khorsandi* nor our decision in this case is in conflict with the supreme court's decision in *Diversicare*. In *Diversicare*, the essence of the claim was that the health care provider's lapses in professional judgment allowed the claimant to be injured by another. 185 S.W.3d at 851. The supreme court specifically noted that the claim was not that the defendant had committed the sexual assault; rather, that it had negligently allowed it to occur. Here, the claim against Morales is that he injured the claimant by his own actions; the claim has nothing to do with a health care provider's lapse in professional judgment or failure to protect a patient due to an absence of supervision or monitoring. *See id.* at 851, 855. Accordingly, because Holguin's claim for sexual assault against Morales was not a health care liability claim, no expert report was required and the trial court erred in dismissing Holguin's claim against Morales.

### Claims Against Laredo Regional

 Holguin seemingly asserted two claims against Laredo Regional. First, he alleged the hospital was vicariously liable for Morales's conduct based on the doctrine of *respondeat superior*. Second, he alleged the hospital was negligent in its own right for failing to protect him from Morales. More specifically, that the hospital was negligent in hiring, training, and supervising Morales. We hold the first claim is nothing more than a recasting of the second. In asserting negligence based on vicarious liability, Holguin contends Laredo Regional was negligent in its hiring, training and supervision of its employee, Morales. This is the exact same basis upon which Holguin seeks to hold Laredo Regional liable in its own right. Accordingly, we need only determine whether the

claims for negligent hiring, training, and supervision are health care liability claims. *See Kidd,* 214 S.W.3d at 34–35 (holding that claim of vicarious liability was recasted negligence claim based on failure to take adequate measures to protect patient from health care provider's employee).

In his petition, Holguin alleged Laredo Regional had a duty to take appropriate measures to ensure that it hired, trained, and supervised its employees in a manner that would protect its patients. Holguin claimed Laredo Regional breached this duty with regard to the hiring, training, and supervision of nurse Morales. Holguin contends his claim against Laredo Regional is not a health care liability claim because it is not a safety claim "directly related to health care." Holguin argues this court cannot rely on the supreme court's opinion in *Diversicare* to hold his claim is a health care liability claim because the definition of "health care liability claim" has been amended since *Diversicare* was decided. *Compare* Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041, *repealed and codified as amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847, 864, 884 *with* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13) (Vernon 2005). Holguin claims this is not a health care liability claim because under the applicable definition of health care liability claim a safety claim must be "directly related to health care," and his is not. *See Valley Baptist Med. Ctr. v. Stradley,* 210 S.W.3d 770, 775 (Tex.App.–Corpus Christi 2006, pet. denied); *Christus Health v. Beal,* No. 01–06–01151–CV, 2007 WL 2132233, *6 (Tex. App.–Houston [1st Dist.] Jul. 26, 2007, no pet.).

This court has already rejected Holguin's contention that to qualify as a health care liability claim a claim based on safety

departures must be "directly related to health care." *See Highsmith*, 211 S.W.3d at 328. *Highsmith* was decided after *Diversicare*, relied upon *Diversicare*, and was based on the definition of health care liability claim applicable to Holguin's claim, i.e., the current definition. *See id.* at 327. Therefore, we need not determine if Holguin's claim is a safety claim "directly related to health care"; rather, we need only determine if the claim is one that is a departure from accepted standards of safety applicable in the context of health or medical care. We hold that it is.

In *Diversicare*, the supreme court held that professional supervision, monitoring, and **protection of patients** in a health care facility necessarily implicated accepted standards of safety under the statutory definition of health care liability claim. 185 S.W.3d at 855 (emphasis added). Following *Diversicare*, this court reached the same result in *Sw. Mental Health Ctr. v. Olivo*, No. 04–06–00256–CV, 2006 WL 2682245, *1 (Tex.App.–San Antonio Sep.20, 2006, no pet.) (mem. op.). In *Olivo*, a father alleged his minor child was sexually assaulted by an employee of a mental health facility and brought suit against the facility. *Id.* The father did not file an expert report and the facility moved to dismiss, which the trial court denied. *Id.* On appeal, we held that the gravamen of the father's claims that the mental health facility was negligent "in failing to keep and maintain a proper procedure to prevent [Martinez] from being alone with the minor Plaintiff" and "in failing to provide a female employee to assist minor Plaintiff in her relocation within [Southwest's] premises" involved professional supervision, monitoring, and protection of the patient population. *Id.* (citing *Diversicare*, 185 S.W.3d at 854–55). We concluded that such allegations necessarily implicated acceptable standards of safety and reversed the trial court's order. *Id.* at *1–*2.

Here, Holguin alleged Laredo Regional "fail[ed] to properly investigate the background of, hire, train and supervise its employees, including Defendant Morales," "failed to exercise reasonable care to protect its patients from Defendant Morales' [sic] conduct," and "failed to conduct and appropriate background check on Morales or . . . failed to take appropriate measures based upon the information it discovered during Defendant Morales' [sic] background check." Just as in *Olivo*, the thrust of Holguin's claims is Laredo Regional's failure to protect its patients. *See id.* Accordingly, just as in *Olivo*, Holguin has made claims that necessarily implicate acceptable standards of safety pursuant to the definition of health care liability claim.

Expert testimony would be required for the safety claim asserted by Holguin. As the supreme court held in *Diversicare*, "it is not within the common knowledge of the general public to determine the ability of patients in weakened conditions to protect themselves, nor whether a potential target of an attack in a healthcare facility should be better protected and by what means." 185 S.W.3d at 851.

Even if Holguin's claim cannot be categorized as a departure from accepted standards of safety under the definition of health care liability claim, we hold Holguin's claims are nevertheless alleged departures from accepted standards of health care and, thus would fall within the definition of health care liability claim for that reason. Holguin claimed Laredo Regional was negligent in not protecting him from a nurse because it failed to properly hire, train, or supervise the nurse. Health care is provided to patients in health care facilities through the staff, which includes nurses. *See id.* at 849–50. As recognized by the supreme court:

[T]he competent selection and review of medical staff is precisely the type of professional service a hospital is licensed and expected to provide, for it is in the business of providing medical care to patients and protecting them from unreasonable risk of harm while receiving medical treatment.... [T]he competent performance of this responsibility is "inextricably interwoven" with delivering competent quality medical care to hospital patients.

*Id.* at 853 (quoting *Bell v. Sharp Cabrillo Hosp.,* 212 Cal.App.3d 1034, 260 Cal.Rptr. 886, 896 (1989)). Moreover, judgments about health care, including protection of patients, are made by health care professionals as part of the care and treatment of patients admitted to their facilities. *Diversicare,* 185 S.W.3d at 853. It follows that proper staffing for the care and protection of patients is related to and part of the rendition of health care. Without safe, reliable staffing, health care would obviously be compromised because "training and staffing policies and supervision and protection" of patients "are integral components of ... health care services." *Diversicare,* 185 S.W.3d at 850; *see Holleman v. Vadas,* No. 04–05–00875–CV, 2007 WL 1059035, at *4 (Tex.App.–San Antonio Apr. 11, 2007, pet. denied) (mem. op.). As this court held in *Holleman,* when the claim is that a health care provider is negligent in its duties based upon an absence of supervision of staff, the claimant has asserted a health care liability claim because staff supervision "is an integral component of ... health care services." 2007 WL 1059035, at *4; *see also Espinosa v. Baptist Health Sys.,* No. 04–05–00131–CV, 2006 WL 2871262, *2 (Tex. App.–San Antonio Oct. 11, 2006, pet. denied) (mem. op.) (holding that "allegations relating to failure to train, supervise or hire competent personnel, charged with continued medical care" was health care

liability claim); *Kidd,* 214 S.W.3d at 34 (holding that negligent hiring claim was health care liability claim).

Accordingly, we hold the trial court correctly determined Holguin's claims against Laredo Regional were health care liability claims. The trial court did not err in granting the motion to dismiss as to the claims against Laredo Regional.

### CONCLUSION

Based on the foregoing, we hold the trial court erred in dismissing Holguin's claims against Morales individually, but did not err in dismissing Holguin's claims against Laredo Regional. Holguin's issue is sustained as to Morales individually, but overruled as to Laredo Regional. We affirm the portion of the judgment dismissing Holguin's claims against Laredo Regional, but reverse and remand the portion of the judgment dismissing Holguin's claims against Morales individually.