NUMBER 13-09-00666-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RAUL ERNESTO LOAISIGA AND

RAUL ERNESTO LOAISIGA, M.D., P.A., Appellant,


v.


GUADALUPE CERDA, INDIVIDUALLY

AND AS NEXT FRIEND OF MARISSA 

CERDA, A MINOR, AND CINDY VELEZ, Appellees.

 




On appeal from the 444th District Court
of Cameron County, Texas.

 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Garza


Memorandum Opinion by Justice Garza



 Appellants, Raul Ernesto Loaisiga, M.D. ("Dr. Loaisiga") and Raul Ernesto Loaisiga,
M.D., P.A. (the "P.A."), challenge the trial court's judgment denying their motions to dismiss
a lawsuit brought by appellees, Guadalupe Cerda, individually and as next friend of
Marissa Cerda, a minor, and Cindy Velez. By five issues, appellants argue that: (1)
appellees' claims are "health care liability claims" under chapter 74 of the civil practice and
remedies code, see Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2009); (2)
appellees' expert report does not meet the requirements of that chapter; (3) appellees'
expert witness is not qualified to render an opinion against appellants; (4) appellees failed
to establish any "viable cause of action" against the P.A.; and (5) the purported expert
report does not constitute an expert report under chapter 74. We affirm.

I. Background

 Appellees filed the underlying lawsuit on June 17, 2009 against Dr. Loaisiga, the
P.A., and Sunshine Pediatrics, LLP ("Sunshine"). (1) Appellees' original petition alleged the
following facts: On or about April 1, 2008, Guadalupe took her seventeen-year-old
daughter, Marissa, to Sunshine for treatment of a sinus condition. Dr. Loaisiga examined
Marissa, and, "under the guise of listening to [Marissa's] heart through the stethoscope[,]
. . . [he] cupped [Marissa's] breast with the palm of his hand." In a separate incident in
January 2008, Dr. Loaisiga examined Velez, who was twenty-four years of age and
employed as a nurse at Sunshine, because she arrived at work with flu-like symptoms. 
According to the petition, Dr. Loaisiga "asked [Velez] to take off her top" at the beginning
of the examination. When Velez complied, Dr. Loaisiga allegedly "had [Velez] sit on the
examining table and he undid her bra from the front. [He] palmed [Velez's] breast during
his entire examination." The petition asserted causes of action of assault, medical
negligence, ordinary negligence, gross negligence, and intentional infliction of emotional
distress against Dr. Loaisiga. Appellees also asserted claims of medical negligence,
ordinary negligence, and gross negligence against Sunshine.

 Appellees did not explicitly state in their petition that their claims are "health care
liability claims" under chapter 74 of the Texas Civil Practice and Remedies Code. See id.
§ 74.001(a)(13) (Vernon 2005). Nevertheless, "in an abundance of caution . . . given that
[appellees'] claims involve a health care professional," appellees served an expert medical
report and curriculum vitae as required by that chapter. See id. § 74.351. The expert
report was authored by Michael Kilgore, M.D., a family practitioner who has been licensed
to practice since 1985. Dr. Kilgore's report stated in relevant part as follows:

During a routine "sick" visit with at [sic] physician, a stethoscope may be
utilized to listen to the heartbeat of a patient. However, in all applicable
medical standards of care, it is unnecessary that a patient remove their
brazier [sic], nor is it necessary to cup, palm or touch the breast of a female
patient either with the hand holding the stethoscope or the other hand not
holding the instrument to listen to a heart beat. In fact, common sense and
medical professionalism dictate that the examining physician would be
cognizant of the sensitivity of the chest area for a female patient and would
take all precautions necessary to prevent any touching of the patient's
breast.


It is my opinion that if the facts contained in Plaintiff's Petition are true, then
the manner in which these patients were examined by Dr. Loaisiga fell below
the standard of care in the medical profession and that given the violation
against these young women, then they have been harmed. . . .


 . . . .


In review of the action an[d]/or non-actions of Sunshine Pediatrics, it is clear
this entity fell below the standard [of] care that a professional medical office
should provide. Sunshine Pediatrics owed a duty to its patients to ensure
their safety and to have policies in place to prevent the type of patient abuse
that occurred to Ms. Cerda and Ms. Velez.


On September 3, 2009, appellees furnished a supplemental report by Dr. Kilgore which
stated in its entirety:

On August 21, 2009 I provided my professional opinion to [appellees'
attorney] regarding the applicable standards of care and acceptable
practices in performing routine examinations on patients. All opinions
expressed and contained in my previous report are adopted in this
supplemental report and are also applicable to Raul Ernesto Loaisiga, M.D.,
P.A.


I retain the right to further supplement and change any of my opinions
expressed herein.


 Subsequently, Dr. Loaisiga and the P.A. each filed objections to Dr. Kilgore's reports
and motions to dismiss appellees' claims. See id. Dr. Loaisiga and the P.A. both
complained specifically that the claims against them should be dismissed because the
expert report: (1) is "entirely based upon speculation and assumptions"; (2) fails to identify
the standard of care applicable to them; (3) fails to identify the breach of the standard of
care allegedly committed by them; and (4) fails to state whether their alleged negligence
was the proximate cause of appellees' injuries. Dr. Loaisiga also argued that Dr. Kilgore
is not qualified to render an expert opinion in this case because he is not a pediatrician. 
The P.A. additionally argued that the expert report "fails to implicate [the P.A.]" because: 
(1) the supplemental report "gives no basis for why the opinions in the August 21, 2009
opinion 'are also applicable to [the P.A.]'"; and (2) appellees made no "direct liability claims
(i.e.[,] negligent hiring, retention, supervision) against [the P.A.]" and no various liability
claims against the P.A.

 After a hearing, the trial court denied the motions. This accelerated interlocutory
appeal followed. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon 2008)
(permitting appeal of interlocutory order denying all or part of a motion to dismiss for failure
to serve an expert report in a health care liability claim); Tex. R. App. P. 28.1(a) (stating that
appeals from interlocutory orders are accelerated).

II. Standard of Review and Applicable Law

 We review a trial court's order denying a motion to dismiss for failure to comply with
the expert report requirement under an abuse of discretion standard. NCED Mental
Health, Inc. v. Kidd, 214 S.W.3d 28, 32 (Tex. App.-El Paso 2006, no pet.) (applying abuse
of discretion standard to trial court's denial of motion to dismiss); Kendrick v. Garcia, 171
S.W.3d 698, 702 (Tex. App.-Eastland 2005, pet. denied) (same); see Am. Transitional
Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001) (applying abuse of
discretion standard to trial court's granting of motion to dismiss). A trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner or without reference to any
guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985). However, a trial court has no discretion in determining what the law
is or in applying the law to the facts. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992);
Baylor Univ. Med. Ctr. v. Biggs, 237 S.W.3d 909, 916 (Tex. App.-Dallas 2007, pet.
denied). Therefore, when the issues are purely questions of law, we effectively conduct
a de novo review. See Pallares v. Magic Valley Elec. Coop., Inc., 267 S.W.3d 67, 69-70
(Tex. App.-Corpus Christi 2008, pet. ref'd).

 Under chapter 74, a plaintiff asserting a "health care liability claim" must serve a
medical expert report upon each party's attorney no later than the 120th day after the date
the original petition was filed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The report
must "provide[] a fair summary of the expert's opinions as of the date of the report
regarding applicable standards of care, the manner in which the care rendered by the
physician or health care provider failed to meet the standards, and the causal relationship
between that failure and the injury, harm, or damages claimed." Id. § 74.351(r)(6). If it
appears to the court, after a hearing, that the report does not represent an "objective good
faith effort to comply with the definition of an expert report in Subsection (r)(6)," then the
trial court must dismiss the claim. Id. § 74.351(l). To constitute a "good faith effort," the
report must provide enough information to (1) inform the defendant of the specific conduct
the plaintiff has called into question, and (2) provide a basis for the trial court to conclude
that the claims have merit. Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002);
see Palacios, 46 S.W.3d at 879.

 To determine whether a cause of action falls under the statute's definition of a
health care liability claim, we must examine the claim's underlying nature. Valley Baptist
Med. Ctr. v. Stradley, 210 S.W.3d 770, 775 (Tex. App.-Corpus Christi 2006, pet. denied). 
The statute defines "health care liability claim" as:

a cause of action against a health care provider or physician for treatment,
lack of treatment, or other claimed departure from accepted standards of
medical care, or health care, or safety or professional or administrative
services directly related to health care, which proximately results in injury to
or death of a claimant, whether the claimant's claim or cause of action
sounds in tort or contract.


Id. § 74.001(a)(13) (Vernon 2005). "A cause of action alleges a departure from accepted
standards of medical care or health care if the act or omission complained of is an
inseparable part of the rendition of medical services." Diversicare Gen. Partner, Inc. v.
Rubio, 185 S.W.3d 842, 848 (Tex. 2005).

 The trial court should look no further than the report itself, because all the
information relevant to the inquiry is contained within the document's four corners. Bowie
Mem'l Hosp., 79 S.W.3d at 52 (citing Palacios, 46 S.W.3d at 878). The report need not
marshal all the plaintiff's proof, but it must include the expert's opinion on each of the three
elements that the civil practice and remedies code identifies: standard of care, breach, and
causation. Id. Moreover, an expert cannot merely state conclusions about these elements;
the expert must explain the basis of his or her statements to link the conclusions with the
facts. Id. (citing Palacios, 46 S.W.3d at 878; Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex.
1999)).

III. Analysis

A. Claims Against Dr. Loaisiga

 We begin our analysis by assessing the nature of the claims made against Dr.
Loaisiga personally. The allegations underpinning these claims are straightforward: 
appellees contend that Dr. Loaisiga sexually assaulted the two patients while performing
routine examinations. As noted, appellees filed Dr. Kilgore's expert reports out of an
abundance of caution, without conceding that their claims were "health care liability claims"
as defined in chapter 74. We conclude that these claims are not "health care liability
claims" and therefore, no expert medical report was required.

 This case is analogous to Holguin v. Laredo Regional Medical Center, 256 S.W.3d
349 (Tex. App.-San Antonio 2008, no pet.). In Holguin, the plaintiff claimed that he was
sexually assaulted while he was a patient at the defendant hospital. Id. at 351. The
plaintiff sued both the hospital and the nurse who allegedly carried out the assault. Id. The
trial court dismissed the claims against both defendants because the plaintiff failed to serve
an expert medical report pursuant to chapter 74. Id. The San Antonio Court of Appeals
reversed the trial court's judgment with respect to the claims made against the nurse,
concluding that those claims were not "health care liability claims" as defined in the statute. 
Id. at 353-54. The court noted that "[i]t would defy logic to suggest that a sexual assault
'is an inseparable part of the rendition of medical care' or a departure from accepted
standards of health care." Id. at 353 (quoting Diversicare, 185 S.W.3d at 848); see
Christus Spohn Health Sys. Corp. v. Sanchez, 299 S.W.3d 868, 874 (Tex. App.-Corpus
Christi 2009, pet. denied) (holding that plaintiff's claim against two nurses that she was
sexually assaulted during an examination was not a "health care liability claim" in part
because the nurses' alleged conduct "was [not] related to the health care being provided"
and did not "somehow involve[] the professional judgment of [the nurses]"); Jones v.
Khorsandi, 148 S.W.3d 201, 206 (Tex. App.-Eastland 2004, pet. denied) (holding that
plaintiff's claim that he was sexually assaulted by a doctor while under the influence of
medication was not a "health care liability claim" because "the nature of the allegations
against [the doctor] do not involve a breach of the applicable standard of care for health
care providers"); see also Wasserman v. Gugel, No. 14-09-00450-CV, 2010 Tex. App.
LEXIS 3749, at *7-8 (Tex. App.-Houston [14th Dist.] May 20, 2010, pet. filed) (holding that
plaintiff's claim that doctor sexually assaulted her during a surgical consult was not a
"health care liability claim" in part because the claim "has nothing to do with a lapse in
professional judgment or a failure to protect a patient due to an absence of supervision or
monitoring").

 Dr. Loaisiga relies on Vanderwerff v. Beathard, 239 S.W.3d 406 (Tex. App.-Dallas
2007, no pet.), in arguing that the claims made against him were in fact "health care liability
claims." In Vanderwerff, the plaintiff alleged that the defendant chiropractor "rubbed her
genitals" while performing a chiropractic examination. Id. at 407. The Dallas Court of
Appeals concluded that the claim was a "health care liability claim" in part because the
question of whether the defendant's actions were "within the scope of a chiropractic
examination . . . cannot be answered without reference to the standard of care required of
a chiropractic provider." Id. at 409. We believe Vanderwerff is readily distinguishable from
the instant case. In Vanderwerff, the claimant advised the chiropractor that she was
experiencing pain from her knee to her upper thigh. Id. at 407. The defendant asserted
that his actions were "within the scope of a chiropractic examination" and that "he was
using subjective means to manipulate [plaintiff's] musculoskeletal system." Id. at 409. 
Here, on the other hand, Dr. Loaisiga is accused of twice fondling a patient's breast with
one hand while listening to the patient's heart with a stethoscope with the other hand. This
is not a case where the doctor's conduct could be feasibly explained as a necessary part
of treatment. See Wasserman, 2010 Tex. App. LEXIS 3749, at *10 ("Under no reasonable
view of the allegations we are presented with here could it be argued that a surgical consult
for back surgery would require [the doctor], an orthopedic surgeon, to insert his finger into
[plaintiff's] vagina and ask if she had feelings in that location.").

 We conclude that appellees' claims against Dr. Loaisiga are not "health care liability
claims" and are therefore not subject to the expert report requirements for such claims. 
Accordingly, the trial court did not err in denying Dr. Loaisiga's motion to dismiss. 
Appellants' first issue is overruled as it relates to the claims against Dr. Loaisiga personally.

B. Claims Against The P.A.

 We now turn to the claims made by appellees against the P.A. The P.A. argues on
appeal that these claims are "health care liability claims" and that Dr. Kilgore's expert
reports are insufficient because he is not qualified to render an expert opinion with respect
to the P.A., and because his reports do not satisfy the requirements of chapter 74. 
Specifically, the P.A. contends that Dr. Kilgore's reports: (1) are "completely based upon
assumptions, speculation and conjecture"; (2) require the trial court "to assume facts
outside of the four corners of the expert report" (2); (3) fail to identify the standard of care
applicable to the P.A.; (4) fail to identify how the P.A. breached its standard of care; and
(5) fail to state whether the P.A.'s alleged acts proximately caused appellees' injuries.

 We have already concluded that the claims against Dr. Loaisiga personally are not
"health care liability claims," and that appellees were therefore under no obligation to serve
an expert medical report under chapter 74. We also find that chapter 74 does not apply
to the claims made against the P.A., but for a different reason. Appellees' petition refers
to the P.A. only once--in its introductory section reciting the names and addresses of the
defendants. The appellees make no claim that the P.A. is vicariously liable for Dr.
Loaisiga's negligence or intentional acts; and the appellees make no claim that the P.A.
is directly liable for negligent hiring, negligent supervision, or any other form of negligence
or intentional tort. In fact, the petition does not contain a single allegation or cause of
action asserted against the P.A.; rather, allegations are made only against Dr. Loaisiga
personally and against Sunshine.

 Because no allegations of medical negligence or otherwise were asserted against
the P.A. in appellees' original petition, we cannot say that the requirements of chapter 74
were applicable as to the P.A. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)
(requiring an expert medical report "for each physician or health care provider against
whom a liability claim is asserted . . ." (emphasis added)). We overrule appellants' first
issue as it relates to the P.A. (3)

IV. Conclusion

 We need not address appellants' remaining issues as they have no bearing on the
final disposition of the appeal. See Tex. R. App. P. 47.1. The judgment of the trial court
is affirmed.


 __________________________

 DORI CONTRERAS GARZA

 Justice


Delivered and filed the

5th day of August, 2010.
1. Sunshine is not a party to this appeal.
2. These complaints are based on the fact that Dr. Kilgore stated in his initial report that his opinions
are applicable only "if the facts contained in Plaintiff's Petition are true . . . ." Appellants argue that Dr.
Kilgore's opinions are therefore pure speculation and conjecture, which may not form the basis of an expert 
medical opinion. Hutchinson v. Montemayor, 144 S.W.3d 614, 618 (Tex. App.-San Antonio 2004, no pet.)
(citing Lenger v. Physician's Gen. Hosp., Inc., 455 S.W.2d 703, 706 (Tex. 1970); Bowles v. Bourdon, 148 Tex.
1, 219 S.W.2d 779, 785 (1949)). However, an expert medical report need not marshal all the plaintiff's proof. 
Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). It merely must include the expert's opinion on
standard of care, breach, and causation. Id. In any case, we need not address this particular contention
because, as explained herein, the plaintiffs asserted no "health care liability claim" against the P.A. and were
therefore under no obligation to serve an expert medical report with respect to the P.A. See Tex. R. App. P.
47.1.
3. Appellants do assert by their fourth issue on appeal that the P.A. should be dismissed as a
defendant because "plaintiffs failed to establish any viable cause of action against [the P.A.]." However, this
contention was not made in the P.A.'s motion to dismiss. The only arguments made in its motion to dismiss
were related to the alleged lack of an adequate expert report as to the P.A. under chapter 74. We conclude,
therefore, that the issue of whether appellees have "failed to establish a viable cause of action against [the
P.A.]" has not been preserved for our review. See Tex. R. App. P. 33.1(a)(1)(A) ("As a prerequisite to
presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial
court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining
party sought from the trial court with sufficient specificity to make the trial court aware of the complaint . . . .").