

NUMBER 13-09-00666-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RAUL ERNESTO LOAISIGA AND
RAUL ERNESTO LOAISIGA, M.D., P.A.,                      **Appellant,**

**v.**

GUADALUPE CERDA, INDIVIDUALLY
AND AS NEXT FRIEND OF MARISSA
CERDA, A MINOR, AND CINDY VELEZ,                      **Appellees.**

On appeal from the 444th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Garza**
**Memorandum Opinion by Justice Garza**

Appellants, Raul Ernesto Loaisiga, M.D. ("Dr. Loaisiga") and Raul Ernesto Loaisiga, M.D., P.A. (the "P.A."), challenge the trial court's judgment denying their motions to dismiss a lawsuit brought by appellees, Guadalupe Cerda, individually and as next friend of Marissa Cerda, a minor, and Cindy Velez. By five issues, appellants argue that: (1) appellees' claims are "health care liability claims" under chapter 74 of the civil practice and remedies code, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2009); (2) appellees' expert report does not meet the requirements of that chapter; (3) appellees' expert witness is not qualified to render an opinion against appellants; (4) appellees failed

to establish any "viable cause of action" against the P.A.; and (5) the purported expert report does not constitute an expert report under chapter 74. We affirm.

## I. BACKGROUND

Appellees filed the underlying lawsuit on June 17, 2009 against Dr. Loaisiga, the P.A., and Sunshine Pediatrics, LLP ("Sunshine").[1] Appellees' original petition alleged the following facts: On or about April 1, 2008, Guadalupe took her seventeen-year-old daughter, Marissa, to Sunshine for treatment of a sinus condition. Dr. Loaisiga examined Marissa, and, "under the guise of listening to [Marissa's] heart through the stethoscope[,] . . . [he] cupped [Marissa's] breast with the palm of his hand." In a separate incident in January 2008, Dr. Loaisiga examined Velez, who was twenty-four years of age and employed as a nurse at Sunshine, because she arrived at work with flu-like symptoms. According to the petition, Dr. Loaisiga "asked [Velez] to take off her top" at the beginning of the examination. When Velez complied, Dr. Loaisiga allegedly "had [Velez] sit on the examining table and he undid her bra from the front. [He] palmed [Velez's] breast during his entire examination." The petition asserted causes of action of assault, medical negligence, ordinary negligence, gross negligence, and intentional infliction of emotional distress against Dr. Loaisiga. Appellees also asserted claims of medical negligence, ordinary negligence, and gross negligence against Sunshine.

Appellees did not explicitly state in their petition that their claims are "health care liability claims" under chapter 74 of the Texas Civil Practice and Remedies Code. *See id.* § 74.001(a)(13) (Vernon 2005). Nevertheless, "in an abundance of caution . . . given that [appellees'] claims involve a health care professional," appellees served an expert medical report and curriculum vitae as required by that chapter. *See id.* § 74.351. The expert report was authored by Michael Kilgore, M.D., a family practitioner who has been licensed to practice since 1985. Dr. Kilgore's report stated in relevant part as follows:

> During a routine "sick" visit with at [sic] physician, a stethoscope may be utilized to listen to the heartbeat of a patient. However, in all applicable

---

[1] Sunshine is not a party to this appeal.

2

medical standards of care, it is unnecessary that a patient remove their brazier [sic], nor is it necessary to cup, palm or touch the breast of a female patient either with the hand holding the stethoscope or the other hand not holding the instrument to listen to a heart beat. In fact, common sense and medical professionalism dictate that the examining physician would be cognizant of the sensitivity of the chest area for a female patient and would take all precautions necessary to prevent any touching of the patient's breast.

It is my opinion that if the facts contained in Plaintiff's Petition are true, then the manner in which these patients were examined by Dr. Loaisiga fell below the standard of care in the medical profession and that given the violation against these young women, then they have been harmed. . . .

. . . .

In review of the action an[d]/or non-actions of Sunshine Pediatrics, it is clear this entity fell below the standard [of] care that a professional medical office should provide. Sunshine Pediatrics owed a duty to its patients to ensure their safety and to have policies in place to prevent the type of patient abuse that occurred to Ms. Cerda and Ms. Velez.

On September 3, 2009, appellees furnished a supplemental report by Dr. Kilgore which stated in its entirety:

On August 21, 2009 I provided my professional opinion to [appellees' attorney] regarding the applicable standards of care and acceptable practices in performing routine examinations on patients. All opinions expressed and contained in my previous report are adopted in this supplemental report and are also applicable to Raul Ernesto Loaisiga, M.D., P.A.

I retain the right to further supplement and change any of my opinions expressed herein.

Subsequently, Dr. Loaisiga and the P.A. each filed objections to Dr. Kilgore's reports and motions to dismiss appellees' claims. *See id.* Dr. Loaisiga and the P.A. both complained specifically that the claims against them should be dismissed because the expert report: (1) is "entirely based upon speculation and assumptions"; (2) fails to identify the standard of care applicable to them; (3) fails to identify the breach of the standard of care allegedly committed by them; and (4) fails to state whether their alleged negligence was the proximate cause of appellees' injuries. Dr. Loaisiga also argued that Dr. Kilgore is not qualified to render an expert opinion in this case because he is not a pediatrician. The P.A. additionally argued that the expert report "fails to implicate [the P.A.]" because: (1) the supplemental report "gives no basis for why the opinions in the August 21, 2009

3

opinion 'are also applicable to [the P.A.]'"; and (2) appellees made no "direct liability claims (i.e.[,] negligent hiring, retention, supervision) against [the P.A.]" and no various liability claims against the P.A.

After a hearing, the trial court denied the motions. This accelerated interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon 2008) (permitting appeal of interlocutory order denying all or part of a motion to dismiss for failure to serve an expert report in a health care liability claim); TEX. R. APP. P. 28.1(a) (stating that appeals from interlocutory orders are accelerated).

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's order denying a motion to dismiss for failure to comply with the expert report requirement under an abuse of discretion standard. *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 32 (Tex. App.–El Paso 2006, no pet.) (applying abuse of discretion standard to trial court's denial of motion to dismiss); *Kendrick v. Garcia*, 171 S.W.3d 698, 702 (Tex. App.–Eastland 2005, pet. denied) (same); *see Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) (applying abuse of discretion standard to trial court's granting of motion to dismiss). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). However, a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 916 (Tex. App.–Dallas 2007, pet. denied). Therefore, when the issues are purely questions of law, we effectively conduct a de novo review. *See Pallares v. Magic Valley Elec. Coop., Inc.*, 267 S.W.3d 67, 69-70 (Tex. App.–Corpus Christi 2008, pet. ref'd).

Under chapter 74, a plaintiff asserting a "health care liability claim" must serve a medical expert report upon each party's attorney no later than the 120th day after the date the original petition was filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The report must "provide[] a fair summary of the expert's opinions as of the date of the report

4

regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). If it appears to the court, after a hearing, that the report does not represent an "objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)," then the trial court must dismiss the claim. *Id.* § 74.351(*l*). To constitute a "good faith effort," the report must provide enough information to (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see Palacios*, 46 S.W.3d at 879.

To determine whether a cause of action falls under the statute's definition of a health care liability claim, we must examine the claim's underlying nature. *Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 775 (Tex. App.–Corpus Christi 2006, pet. denied). The statute defines "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13) (Vernon 2005). "A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005).

The trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 878). The report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the three elements that the civil practice and remedies code identifies: standard of care, breach, and causation. *Id.* Moreover, an expert cannot merely state conclusions about these elements;

5

the expert must explain the basis of his or her statements to link the conclusions with the facts. *Id.* (citing *Palacios*, 46 S.W.3d at 878; *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)).

## III. ANALYSIS

### A. Claims Against Dr. Loaisiga

We begin our analysis by assessing the nature of the claims made against Dr. Loaisiga personally. The allegations underpinning these claims are straightforward: appellees contend that Dr. Loaisiga sexually assaulted the two patients while performing routine examinations. As noted, appellees filed Dr. Kilgore's expert reports out of an abundance of caution, without conceding that their claims were "health care liability claims" as defined in chapter 74. We conclude that these claims are not "health care liability claims" and therefore, no expert medical report was required.

This case is analogous to *Holguin v. Laredo Regional Medical Center*, 256 S.W.3d 349 (Tex. App.–San Antonio 2008, no pet.). In *Holguin*, the plaintiff claimed that he was sexually assaulted while he was a patient at the defendant hospital. *Id.* at 351. The plaintiff sued both the hospital and the nurse who allegedly carried out the assault. *Id.* The trial court dismissed the claims against both defendants because the plaintiff failed to serve an expert medical report pursuant to chapter 74. *Id.* The San Antonio Court of Appeals reversed the trial court's judgment with respect to the claims made against the nurse, concluding that those claims were not "health care liability claims" as defined in the statute. *Id.* at 353-54. The court noted that "[i]t would defy logic to suggest that a sexual assault 'is an inseparable part of the rendition of medical care' or a departure from accepted standards of health care." *Id.* at 353 (quoting *Diversicare*, 185 S.W.3d at 848); *see Christus Spohn Health Sys. Corp. v. Sanchez*, 299 S.W.3d 868, 874 (Tex. App.–Corpus Christi 2009, pet. denied) (holding that plaintiff's claim against two nurses that she was sexually assaulted during an examination was not a "health care liability claim" in part because the nurses' alleged conduct "was [not] related to the health care being provided" and did not "somehow involve[] the professional judgment of [the nurses]"); *Jones v.*

6

*Khorsandi*, 148 S.W.3d 201, 206 (Tex. App.–Eastland 2004, pet. denied) (holding that plaintiff's claim that he was sexually assaulted by a doctor while under the influence of medication was not a "health care liability claim" because "the nature of the allegations against [the doctor] do not involve a breach of the applicable standard of care for health care providers"); *see also Wasserman v. Gugel*, No. 14-09-00450-CV, 2010 Tex. App. LEXIS 3749, at *7-8 (Tex. App.–Houston [14th Dist.] May 20, 2010, pet. filed) (holding that plaintiff's claim that doctor sexually assaulted her during a surgical consult was not a "health care liability claim" in part because the claim "has nothing to do with a lapse in professional judgment or a failure to protect a patient due to an absence of supervision or monitoring").

Dr. Loaisiga relies on *Vanderwerff v. Beathard*, 239 S.W.3d 406 (Tex. App.–Dallas 2007, no pet.), in arguing that the claims made against him were in fact "health care liability claims." In *Vanderwerff*, the plaintiff alleged that the defendant chiropractor "rubbed her genitals" while performing a chiropractic examination. *Id.* at 407. The Dallas Court of Appeals concluded that the claim was a "health care liability claim" in part because the question of whether the defendant's actions were "within the scope of a chiropractic examination . . . cannot be answered without reference to the standard of care required of a chiropractic provider." *Id.* at 409. We believe *Vanderwerff* is readily distinguishable from the instant case. In *Vanderwerff*, the claimant advised the chiropractor that she was experiencing pain from her knee to her upper thigh. *Id.* at 407. The defendant asserted that his actions were "within the scope of a chiropractic examination" and that "he was using subjective means to manipulate [plaintiff's] musculoskeletal system." *Id.* at 409. Here, on the other hand, Dr. Loaisiga is accused of twice fondling a patient's breast with one hand while listening to the patient's heart with a stethoscope with the other hand. This is not a case where the doctor's conduct could be feasibly explained as a necessary part of treatment. *See Wasserman*, 2010 Tex. App. LEXIS 3749, at *10 ("Under no reasonable view of the allegations we are presented with here could it be argued that a surgical consult for back surgery would require [the doctor], an orthopedic surgeon, to insert his finger into

7

[plaintiff's] vagina and ask if she had feelings in that location.").

We conclude that appellees' claims against Dr. Loaisiga are not "health care liability claims" and are therefore not subject to the expert report requirements for such claims. Accordingly, the trial court did not err in denying Dr. Loaisiga's motion to dismiss. Appellants' first issue is overruled as it relates to the claims against Dr. Loaisiga personally.

## B. Claims Against The P.A.

We now turn to the claims made by appellees against the P.A. The P.A. argues on appeal that these claims are "health care liability claims" and that Dr. Kilgore's expert reports are insufficient because he is not qualified to render an expert opinion with respect to the P.A., and because his reports do not satisfy the requirements of chapter 74. Specifically, the P.A. contends that Dr. Kilgore's reports: (1) are "completely based upon assumptions, speculation and conjecture"; (2) require the trial court "to assume facts outside of the four corners of the expert report"[2]; (3) fail to identify the standard of care applicable to the P.A.; (4) fail to identify how the P.A. breached its standard of care; and (5) fail to state whether the P.A.'s alleged acts proximately caused appellees' injuries.

We have already concluded that the claims against Dr. Loaisiga personally are not "health care liability claims," and that appellees were therefore under no obligation to serve an expert medical report under chapter 74. We also find that chapter 74 does not apply to the claims made against the P.A., but for a different reason. Appellees' petition refers to the P.A. only once—in its introductory section reciting the names and addresses of the defendants. The appellees make no claim that the P.A. is vicariously liable for Dr. Loaisiga's negligence or intentional acts; and the appellees make no claim that the P.A.

_____

[2] These complaints are based on the fact that Dr. Kilgore stated in his initial report that his opinions are applicable only "if the facts contained in Plaintiff's Petition are true . . . ." Appellants argue that Dr. Kilgore's opinions are therefore pure speculation and conjecture, which may not form the basis of an expert medical opinion. *Hutchinson v. Montemayor*, 144 S.W.3d 614, 618 (Tex. App.–San Antonio 2004, no pet.) (citing *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex. 1970); *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779, 785 (1949)). However, an expert medical report need not marshal all the plaintiff's proof. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). It merely must include the expert's opinion on standard of care, breach, and causation. *Id.* In any case, we need not address this particular contention because, as explained herein, the plaintiffs asserted no "health care liability claim" against the P.A. and were therefore under no obligation to serve an expert medical report with respect to the P.A. *See* TEX. R. APP. P. 47.1.

8

is directly liable for negligent hiring, negligent supervision, or any other form of negligence or intentional tort. In fact, the petition does not contain a single allegation or cause of action asserted against the P.A.; rather, allegations are made only against Dr. Loaisiga personally and against Sunshine.

Because no allegations of medical negligence or otherwise were asserted against the P.A. in appellees' original petition, we cannot say that the requirements of chapter 74 were applicable as to the P.A. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (requiring an expert medical report "for each physician or health care provider *against whom a liability claim is asserted* . . ." (emphasis added)). We overrule appellants' first issue as it relates to the P.A.[3]

## IV. CONCLUSION

We need not address appellants' remaining issues as they have no bearing on the final disposition of the appeal. *See* TEX. R. APP. P. 47.1. The judgment of the trial court is affirmed.

DORI CONTRERAS GARZA
Justice

Delivered and filed the
5th day of August, 2010.

_____

[3] Appellants do assert by their fourth issue on appeal that the P.A. should be dismissed as a defendant because "plaintiffs failed to establish any viable cause of action against [the P.A.]." However, this contention was not made in the P.A.'s motion to dismiss. The only arguments made in its motion to dismiss were related to the alleged lack of an adequate expert report as to the P.A. under chapter 74. We conclude, therefore, that the issue of whether appellees have "failed to establish a viable cause of action against [the P.A.]" has not been preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1)(A) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint . . . .").