**Penelope HUNSUCKER and John Hunsucker, Appellants,**

v.

**Robert J. ROWNTREE, II, M.D., Appellee.**

**No. 6–90–086–CV.**

Court of Appeals of Texas, Texarkana.

Aug. 6, 1991.

Rehearing Overruled Aug. 28, 1991.

C.L. Mike Schmidt, Stradley, Schmidt & Wright, Dallas, for appellants.

Leonard E. Davis, Potter, Guinn, Minton, Roberts, Tyler, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

OPINION

BLEIL, Justice.

John and Penelope Hunsucker appeal from an adverse summary judgment rendered in their medical malpractice suit against Robert Rowntree, M.D. The critical inquiry concerns whether evidence of Rowntree's prescription of medication to

Penelope Hunsucker can constitute evidence of continued medical treatment. We hold that it can and reverse the summary judgment.

Penelope Hunsucker first sought treatment from Rowntree, a physician who specializes in internal medicine, on October 4, 1985. Rowntree examined her and prescribed Sectral, a medication for high blood pressure. Penelope Hunsucker returned to Rowntree's office on October 11, 1985, November 11, 1985, and January 3, 1986, to have her blood pressure checked. On February 13, 1986, she returned complaining of bladder problems. After a brief examination, Rowntree referred her to a urologist and refilled her prescription for Sectral.

Rowntree last personally examined Penelope Hunsucker on September 15, 1986. Her complaints at that time were primarily stress related. After examination, Rowntree continued her Sectral medication. Penelope Hunsucker called Rowntree's office on May 22, 1987, and requested a refill for Sectral. Rowntree ordered the prescription refilled, and prescribed five additional refills. Hunsucker refilled the prescription four times, from May 22, 1987 to December 13, 1987, and, at the time of her stroke on January 5, 1988, had one refill of Sectral left on her prescription.

On July 31, 1989, she sent notice of her intention to file a lawsuit pursuant to TEX. REV.CIV.STAT.ANN. art. 4590i, § 4.01 (Vernon Supp.1991). She and her husband filed suit on October 30, 1989. Rowntree moved for summary judgment on the basis that the Medical Liability and Insurance Improvement Act's two-year statute of limitations barred the suit. TEX.REV.CIV.STAT. ANN. art. 4590i, § 10.01 (Vernon Supp. 1991). The trial court granted the motion. The question on appeal is whether the trial court erred in granting Rowntree's motion for summary judgment on the basis of the statute of limitations because the summary judgment proof raises a genuine issue of material fact concerning when the cause of action accrued.

Summary judgment is proper only if the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex.1979); *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 592–93 (Tex. 1975); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 379 (Tex.App.–Texarkana 1989, no writ); TEX.R.CIV.P. 166a(c).

■ When a defendant in a medical malpractice case moves for summary judgment based on an applicable statute of limitations, the defendant, as the movant, has the burden to show that the statute bars the plaintiff's suit as a matter of law. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983); *Sanchez v. Memorial Medical Center Hosp.*, 769 S.W.2d 656, 658 (Tex.App.– Corpus Christi 1989, no writ). The movant must conclusively establish the date on which the statute of limitations began to run. *Delgado v. Burns*, 656 S.W.2d at 429; *Jones v. Cross*, 773 S.W.2d 41, 43 (Tex. App.–Houston [1st Dist.] 1989, writ denied).

■ Medical malpractice actions are governed by an absolute two-year limitations period. TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01 provides:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed;

. . . .

Section 10.01, therefore, establishes three events which may trigger the running of limitations: (1) the occurrence of the breach or tort; (2) the date the health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made was completed. The provision allowing limitations to run from the date the medical or health care treatment that is the subject of the claim is completed applies where the patient's injury occurs during a course of treatment for a particular condition and the exact date of injury is not ascertainable. In those cases, the limitations period begins to run on the last day of treatment. *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.

1987); *Sanchez v. Memorial Medical Center Hosp.*, 769 S.W.2d at 658. When the precise date of the specific breach or tort is readily ascertainable, the limitations period runs from the date of the breach or tort. *Kimball v. Brothers*, 741 S.W.2d at 372.

The Hunsuckers argue that Rowntree's negligence occurred during his continuing treatment of Penelope Hunsucker. If Rowntree's continuing treatment did not end so long as she was taking medication prescribed by him, then the treatment continued until the date of her stroke, or until January 5, 1988. Rowntree's attorney argues that a specific date for the alleged breach or tort is ascertainable, that being September 15, 1986, the day Rowntree last examined Penelope Hunsucker.

Although the Hunsuckers do not specifically allege that Rowntree was negligent during a continuing course of treatment, they clearly allege that he was negligent in failing to properly diagnose and treat Penelope Hunsucker's condition, occluded carotid arteries.[1] Consequently, the limitations statute began to run at the end of the last treatment. *Kimball v. Brothers*, 741 S.W.2d at 372. The issue we must decide is whether the summary judgment evidence raises a fact question of whether Rowntree last treated Penelope Hunsucker within two years of October 30, 1989.

In support of his motion for summary judgment, Rowntree produced an affidavit in which he states, in pertinent part, the following:

PENELOPE HUNSUCKER sought my treatment on October 4, 1985. At that time, she was complaining of high blood pressure which she noted had been present for about two years. I examined her and prescribed Sectral, a medication to treat high blood pressure. She returned to my office for the nurses to check her blood pressure on October 11, 1985; November 11, 1985; and January 3, 1986. I did not see MRS. HUNSUCKER at any of those times.

On February 13, 1986, MRS. HUNSUCKER was complaining of bladder problems. After a limited examination, she was referred to a urologist and her prescription of Sectral refilled at that time.

MRS. HUNSUCKER returned to my office approximately nine months later on September 15, 1986. Her complaints were stress related due to recent deaths and the surgery of her mother. I examined her chest and continued her medication of Sectral. I did not see MRS. HUNSUCKER after September 15, 1986. Absent a patient's making further complaints, any stress test, M.R.I., Doppler, or any other test would have been ordered following an examination, if necessary. A limited examination was conducted at this visit. There was no follow-up exam scheduled. This is the last time I examined MRS. HUNSUCKER.

Apparently, eight months later on May 22, 1987, she telephoned my office, asking for a refill of her medication for high blood

---

1. The Hunsuckers' original petition alleges in pertinent part:

Plaintiff would show the Court that on the occasion in question the acts of Defendant ROWNTREE fell below the standard of care of a reasonably prudent physician or other health care provider of the same specialty, locality and school of practice and constituted negligence and professional malpractice in the following particulars:

(1) In failing to conduct a proper examination of PENELOPE HUNSUCKER, which examination would have disclosed her condition;

(2) In failing to consult with, and/or refer, PENELOPE HUNSUCKER to a qualified specialist to aid in diagnosing the occluded arteries and providing the medical care required by PENELOPE HUNSUCKER;

(3) In failing to timely diagnose that PENELOPE HUNSUCKER was suffering from occluded carotid arteries;

(4) In failing to timely perform, or refer PENELOPE HUNSUCKER to a surgeon to timely perform, a bypass of the occluded carotid arteries;

(5) In failing to monitor, interpret, assess and report pertinent observations related to the condition of PENELOPE HUNSUCKER;

Each of the aforementioned acts or omissions on the part of the defendant constituted negligence and professional malpractice, and each of such acts was a direct and proximate cause of stroke sustained by PENELOPE HUNSUCKER and the delay of treatment therefor which in all probability has caused her to sustain a stroke and suffer permanent impairment as a result thereof.

pressure. Her prescription was refilled with a prescription that allowed her to refill the prescription five times. At this time, she was not seen or examined by me or anyone from my office. There were no complaints, nor was there any request to see me. This telephone contact was the last contact made with my office. She apparently sought the services of other physicians after May 22, 1987.

MRS. HUNSUCKER suffered a stroke as a result of an occluded carotid artery nine months later. I was not contacted to treat her. She was treated by other doctors and eventually referred to Dallas for treatment. She was also treated by DR. RODNEY MARTIN, an ear, nose and throat specialist, and DR. JACK CO-VIN, a doctor of internal medicine, after May 22, 1987, but before her stroke.

In my opinion, based upon reasonable medical probability, the prescription of Sectral did not cause or contribute to cause her stroke. It is my understanding that the Plaintiffs are claiming that I should have properly examined her or performed additional tests to discover the occluded artery that caused her stroke. While denying that any tests were warranted during my examination, the only dates on which I examined the patient were October 4, 1985; February 13, 1986; and September 15, 1986. These were the only times in which I examined her or would have ordered any tests if necessary.

The Hunsuckers admitted that September 15, 1986, was the last time Rowntree physically examined Penelope Hunsucker and that she did not see him after that date.

Penelope Hunsucker's other contact with Rowntree occurred eight months later, on May 22, 1987, when she phoned requesting a refill of her blood pressure medication. At that time Rowntree renewed the prescription for Sectral and authorized five refills.

If Rowntree's treatment of Penelope Hunsucker continued through January 5, 1988, while she was taking the Sectral, or even through December 13, 1987, when she last purchased a refill for Sectral, then suit was not barred by limitations, because suit was filed on October 30, 1989, within two years and seventy-five days of those dates.[2]

We hold that the summary judgment evidence raises a question whether Rowntree's treatment of Penelope Hunsucker continued for as long as she was taking the medication which he prescribed during the time for which it was prescribed. This is in keeping with prior pronouncements in Texas and other jurisdictions.

In *Scarborough v. Aetna Life Ins. Co.*, 572 S.W.2d 282 (Tex.1978), the court acknowledged that the general rule was "that 'medical treatment' includes more than an operation or a prescription of drugs to relieve or cure a patient's condition." 572 S.W.2d at 284. If this be so—that medical treatment encompasses *more* than a prescription of drugs—prescribing drugs to relieve or cure a condition is more certainly medical treatment. *See, e.g., Thomas v. Jacksonville Elec. Auth.*, 536 So.2d 310, 310–11 (Fla.Dist.Ct.App.1988) (claimant's refill of prescription medication for period of over two years tolled statute of limitations); *City of Orlando v. Blackburn*, 519 So.2d 1017, 1018–19 (Fla.Dist.Ct. App.1987) (refill of prescription pain medication for approximately two and one-half years qualified as medical treatment); *accord, Freeman v. Mid–South Ins. Co.*, 197 Ga.App. 445, 398 S.E.2d 727, 728 (1990) (patient's obtaining refills of prescription medication from drugstore without contacting physician constituted medical services since statute required that physician authorize prescriptions). Earlier, in *International Travelers' Ass'n v. Yates*, 29 S.W.2d 980 (Tex.Comm'n App.1930, judgmt adopted), it had been held that administering an anesthetic constituted "medical

**2.** If notice of intent to file malpractice claim is given before the two year limitations period expires, the statute is tolled for a period of seventy-five days from the date of notice. *See*

*Kimball v. Brothers*, 712 S.W.2d 538, 540 (Tex. App.–Waco 1986), *aff'd*, 741 S.W.2d 370 (Tex. 1987); Tex.Rev.Civ.Stat.Ann. art. 4590i, § 4.01(c) (Vernon Supp.1991).

treatment," the court holding that, "The physician was treating the assured for a disease with which he was suffering." 29 S.W.2d at 981. The court commented on the difference between easing pain by anesthetic and easing pain or curing otherwise:

We are unable to see any distinction between medical treatment to relieve pain caused by disease and the giving of an anesthetic to prevent pain resulting from treatment necessary to effect a cure of such disease. Undoubtedly, it would be as much the duty of a physician to use the means known to medical science to prevent the infliction of unnecessary pain upon his patient while engaged in performing an operation to effect a cure of disease with which the patient is suffering as it would be to relieve him of pain necessarily incident to the disease itself. It would seem that one would be as much medical treatment as the other.

Likewise, the prescription of drugs is indistinguishable from other such medical treatment. A common thread that seems to run through the cases is that, in considering what constitutes *medical treatment,* that term must be viewed in a broad and reasonable light. Saying just that, and citing with approval from *Order of United Commercial Travelers v. Shane,* 64 F.2d 55, 59 (8th Cir.1933), a Texas court of appeals continued discussing the term *treatment:* "It includes *not merely the* actual operation in a surgical case or the *giving of a prescription in a nonsurgical case,* but also the preliminary examination, including sometimes an exploratory operation or an exploratory examination." *Provident Life and Accident Ins. Co. v. Hutson,* 305 S.W.2d 837, 839–40 (Tex.Civ.App.–Beaumont 1957, writ ref'd n.r.e.) (emphasis added).

A *reasonable* interpretation of the term *medical treatment* is called for. The term *treatment* is defined as: "A broad term covering all the steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies." BLACK'S LAW DICTIONARY 1502 (6th ed. 1990). The words, "care," "treatment," or "attendance," as used in provi-

sions requiring that the insured receive medical care, have been held to include the sending of medicine and prescriptions through the mail or by friends. *See* ANNOT., 84 A.L.R.2d 375, 396 (1962); *see also* 44 AM.JUR.2d *Insurance* § 1494 (1982). These same words have also been held to include self-administered treatment under the advice of a physician. 44 Am.Jur.2d *Insurance* § 1494.

In this *summary judgment* case, we must view the evidence in the light most favorable to the nonmovants, the Hunsuckers. Further, we must give the term *treatment* or the term *medical treatment* both a broad and reasonable interpretation. In so doing, and in using common sense or applying the language of the mentioned cases *at least* as a matter of fact, we conclude that a trier of fact could find that Rowntree gave Penelope Hunsucker "medical treatment" within two years of the filing of this lawsuit.

An additional consideration in this case is whether or not Rowntree carried his burden of conclusively establishing the date on which the limitations period commenced. *See Jones v. Cross,* 773 S.W.2d at 43; *see also Delgado v. Burns,* 656 S.W.2d at 429. Unless the summary judgment record conclusively shows one specific date on which the limitations period commenced, Rowntree, as the movant, has not met his burden.

In this case, as in the *Jones* case, the Hunsuckers allege in their petition and affirm in their depositions that Penelope Hunsucker called Rowntree's office to obtain a refill on May 22, 1987, and again in August or September of 1987. Additionally, in his deposition John Hunsucker states that his wife obtained a refill of her high blood pressure medication by telephone "after May 22, 1987." We must accept as true the Hunsuckers' relevant allegations, and, if the pleadings and the sworn depositions, when liberally construed, indicate a fact question, summary judgment is improper. *See Jones v. Cross,* 773 S.W.2d at 43; *Abbott v. City of Kaufman,* 717

S.W.2d 927, 929 (Tex.App.–Tyler 1986, writ dism'd).

In his affidavit in support of his motion for summary judgment, Rowntree states only that, "I did not see MRS. HUNSUCKER after September 15, 1986." This does not conclusively establish that his treatment of her ceased as of that date.

The Hunsuckers' pleadings and sworn depositions, given a liberal construction, allege that Rowntree was negligent during a continuing course of treatment that ended within two years of the filing of this suit. Rowntree's assertion that he did not see Penelope Hunsucker after September 15, 1986, fails to conclusively establish a specific beginning date for the two-year limitations period.

Because an issue of fact was raised as to whether this suit was barred by limitations, we hold that the trial court erred in granting summary judgment. The case is reversed and remanded for a trial.

CORNELIUS, Chief Justice, dissenting.

While I agree that a physician's act in prescribing medicine for a patient may constitute continuing treatment, I do not agree that the patient's unilateral act in refilling a prescription months after the patient's last contact with the physician constitutes "continuing treatment by the physician" so as to delay the running of limitations.

In this case, both Mrs. Hunsucker's and Dr. Rowntree's summary judgment evidence conclusively establish that Mrs. Hunsucker's last contact with the doctor was on May 22, 1987, when he renewed her prescription for Sectral. If that date constituted the last date of Dr. Rowntree's continuous treatment of Mrs. Hunsucker, limitations had run before her suit was filed.

Mrs. Hunsucker's pleadings allege various omissions in Dr. Rowntree's treatment, including failure to properly diagnose, failure to refer to other physicians, failure to monitor her condition, and failure to perform surgery. They do not allege that Dr. Rowntree was negligent in prescribing Sectral.

There is nothing in the pleadings to indicate that Dr. Rowntree's failure to diagnose Mrs. Hunsucker's occluded carotid artery occurred on any date but September 15, 1986, the date he last examined her, nor is there anything in the pleadings to indicate that his failure to refer her to another doctor or for surgery arose out of anything but his examination of her. Assuming that the doctor's failure to *monitor* Mrs. Hunsucker's condition was a negligent act on which she based her suit, the last date he treated her was May 22, 1987, the date he prescribed medication.

Mrs. Hunsucker contends that her act in refilling the Sectral prescription postponed the beginning of limitations until the date of the last refill, which was December 13, 1987. Although there are no Texas cases addressing the effect of a patient's unilateral prescription refills on the running of limitations, other jurisdictions have held the continuous treatment doctrine to be inapplicable where the patient relies solely on the continued use of medication long after the last contact with the physician who prescribed it. *Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133, 138–39 (N.D.1990); *Froysland v. Altenburg*, 439 N.W.2d 797 (N.D.1989); *Parrott v. Rand*, 126 A.D.2d 621, 511 N.Y.S.2d 57 (1987). As the Supreme Court of North Dakota has stated:

> We do not believe that a continued prescription for medication eight years after the last personal contact with the doctor constitutes continuous treatment....

*Wheeler v. Schmid Laboratories, Inc.*, supra, at 138–39.

The cases cited by the majority opinion do not support the proposition for which they are cited. In *Thomas v. Jacksonville Electric Authority*, 536 So.2d 310 (Fla. Dist.Ct.App.1988), the question in a workers' compensation case was whether medicines prescribed for the worker constituted "remedial treatment" although the medicine was only palliative rather than curative. The court held that it did constitute remedial treatment. The prescription for the medicine, however, was made within the limitations period. In *City of Orlando*

*v. Blackburn,* 519 So.2d 1017 (Fla.Dist.Ct. App.1987), the same question was involved, and the court made the same holding. In *Orlando,* however, the physician *testified that he treated the patient* from 1983 until 1986 and *gave him eleven prescriptions* for medicine, although he did not see him personally. The claim for medical benefits in that case was filed in 1986, well within the limitations period. *Freeman v. Mid–South Ins. Co.,* 197 Ga.App. 445, 398 S.E.2d 727 (1990), was a case where Freeman sued his health insurance carrier for medical expenses. The policy excluded coverage for medicines used in treating pre-existing ailments. The court held that since Freeman admittedly had taken *prescribed* medicines for a pre-existing condition, he came within the policy exclusion. The basis of the holding was that he had incurred medical expenses related to a pre-existing condition. None of the cases cited in the majority opinion focuses on the term "treatment" as it applies to the physician.

The continuous treatment rule necessarily focuses on the physician. Treatment requires some act on the part of the physician. If it did not, any patient having a purported claim against a physician could indefinitely stay the running of limitations by engaging in unilateral acts in response to the physician's previous treatment. For example, a patient whose physician advised him to follow a regimen of diet or exercise could forever forestall the running of limitations simply by periodically exercising or dieting, even though it had been months, or even years, since he had seen, contacted, or been treated by the physician. The same is true of taking prescribed medicines. If refills are allowed, the patient can indefinitely forestall limitations by ex parte purchases of medicine. Such an interpretation of the rule would have the running of limitations depend on the act of the patient, rather than on the act of the physician. In my judgment that would thwart the intention and purpose of the Legislature in adopting an absolute two-year statute of limitations for malpractice claims.

My disagreement with the majority is primarily on what constitutes the prescription of medicine. Apparently, the majority concludes that a prescription is reinstituted or recreated every time the patient purchases a refill. I believe the prescription constitutes treatment only on the date it is actually made and that the unilateral refilling of it, even when refills are allowed by the doctor, does not constitute a new or continuing prescription. Although the doctor permitted refills in this case, they were not *required.* Whether or not they were refilled was left strictly to Mrs. Hunsucker's option. If it can be said that Dr. Rowntree prescribed the refills, he prescribed them on May 22, 1987, when he wrote the prescription, not on the subsequent dates when the refills were purchased.

Had Mrs. Hunsucker alleged that her injuries were caused by the *medication* Dr. Rowntree prescribed for her, it might be proper to consider the date she last refilled the medicine to be date of last treatment. But when she alleges, as she did here, only failure to discover the occluded artery, to refer her to other doctors, and to monitor symptoms, the latest date that can be considered treatment is the date of the last prescription, which was May 22, 1987.

I would affirm the summary judgment because the undisputed evidence shows that the last date Mrs. Hunsucker was treated by Dr. Rowntree was May 22, 1987.