NO. 07-10-00361-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL E

 



MAY
13, 2011

 



 

COVENANT HEALTH SYSTEM, D/B/A COVENANT MEDICAL CENTER, AND D/B/A COVENANT
HEART & VASCULAR INSTITUTE, AND D/B/A COVENANT HEART INSTITUTE, AND D/B/A
COVENANT WELL HEART SERVICES, APPELLANT

 

v.

 

LINDA BARNETT AND ROBERT BARNETT, APPELLEES 



 



 

 FROM THE 72ND DISTRICT COURT OF
LUBBOCK COUNTY;

 

NO. 2010-550,709; HONORABLE RUBEN GONZALES REYES, JUDGE



 



 

Before CAMPBELL
and PIRTLE, JJ. and BOYD, S.J.[1]

 

 

OPINION

 

Appellant Covenant Health System[2]
brings this interlocutory appeal[3]
challenging the order of the trial court denying its motion to dismiss the
claims of appellees Linda Barnett and Robert Barnett
for their failure to serve an expert report. 
Finding the Barnetts’ claims are health care
liability claims, we reverse the trial court’s order and remand the case to the
trial court.

Background

Covenant advertised its Fifth Annual
Heart Symposium in the Lubbock newspaper. 
The event was held at a Lubbock hotel on a Saturday morning in February
2008.  The newspaper ad, which indicated
the symposium was sponsored by Covenant Well Heart Services, began this way: 

All your life you’ve been told you have a Heart of Gold.  Bring it in for an appraisal.  Covenant’s Fifth Annual Heart Symposium.  Holiday Inn Park Plaza . . . .

The schedule printed in the ad
indicated that the symposium’s activities would include brunch, a “healthy
heart cooking demonstration,” and a presentation by the “keynote speaker,” a
nurse practitioner “considered one of the nation’s
foremost thought leaders in heart attack prevention.”  In addition, the schedule advertised “Free
Heart Screenings” available from 8:00 to 11:00 a.m.  The ad instructed “Water only for 12 hours
prior to your free health screening.”  It
gave a telephone number for registration.

Linda Barnett fasted as instructed
and attended the heart symposium.  She
participated in the heart screening. 
According to allegations in the Barnetts’
petition:

During [the screening] Linda Barnett was told to step up and down on an
aerobic step for three minutes.  She was
told that to achieve optimum results, she should try to keep time with the beat
of a metronome that was set by a Covenant staff member.

The step, which was approximately 14 inches high, was placed close to a
wall which forced Plaintiff Linda Barnett to lean back somewhat while stepping
up on the step.  In other words, she
could not lean forward in a natural position when stepping up on the step
without hitting her head on the wall.  

After approximately two minutes into the three minute test, fatigued and
already off balance stepping up and down, Plaintiff Linda Barnett lost her
balance and fell as she came crashing down and shattered her left wrist as she
attempted to catch herself.  

There were numerous employees of [Covenant] milling about and visiting
with each other . . . none of whom acted as a coach or a spotter, nor stood
near to assist Plaintiff Linda Barnett and oversee her during this portion of
the Fitness Screening, nor were close enough to Plaintiff Linda Barnett to
catch her when she fell or to at least break her fall, nor did any of
[Covenant’s] employees or agents even attempt to minimize the injuries of
Plaintiff Linda Barnett when she fell.

***

[Covenant] negligently failed to have anyone available to observe [Linda
Barnett] as she performed the test.  Had
[Covenant] done so, [Covenant] would have been able to either observe that
[Linda Barnett] needed to stop and get off the step or would have been close
enough to have prevented [Linda Barnett] from falling or to have broken her
fall, thus avoiding the serious injuries she sustained.

            The
Barnetts filed suit against Covenant but did not
serve the expert report required by Texas Civil Practice & Remedies Code §
74.351.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a),(b) (West 2011). 
Covenant filed a motion to dismiss on the ground that the Barnetts alleged a health care liability claim, requiring
an expert report, but no report was served. 
The Barnetts responded that the screening did
not constitute medical treatment, hence no expert
report was required.  After hearing the
arguments of the parties, the trial court denied Covenant’s motion to dismiss.[4]  This appeal followed.  

Analysis

            Through
a single issue, Covenant asserts the trial court abused its discretion by
denying the motion to dismiss.  It argues
the Barnetts’ claim is a health care liability claim
for which Chapter 74 requires an expert report and, because the Barnetts did not furnish an expert report, the trial court
had no discretion to refuse dismissal of the case.

We review a trial court’s decision to
grant or deny a motion to dismiss for failure to timely serve the expert report
required by § 74.351(a) under an abuse of discretion standard.  See
Jernigan v. Langley, 195 S.W.3d 91, 93 (Tex. 2006) (per curiam)
(former statute); Jones v. King, 255
S.W.3d 156, 158 (Tex.App.--San Antonio 2008, pet.
denied).  However, when the issue
presented requires statutory interpretation or a determination whether Chapter
74 applies to a claim, the issue presents a question of law which we review de
novo.  Holguin v. Laredo Reg’l
Med. Ctr., L.P., 256 S.W.3d 349, 352 (Tex.App.--San
Antonio 2008, no pet.).  Whether a
claim constitutes a health care liability claim is a question of law.  Id.


A plaintiff who files a health care
liability claim must serve an expert report within 120 days of filing
suit.  Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a) (West 2011).  Subject to
an exception not relevant here, if an expert report has not been served within
that period, on the motion of the affected health care provider a trial court
must enter an order that (1) awards to the affected health care provider
reasonable attorney’s fees and costs of court incurred by the provider, and (2)
dismisses the health care liability claim with prejudice, as to that
provider.  Tex. Civ. Prac. & Rem. Code Ann. §
74.351(b) (West 2011).   

A “health care liability claim” is:

[A] cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care, or health care, or safety or professional or
administrative services directly related to health care, which proximately
results in injury to or death of a claimant, whether the claimant’s claim or
cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13)
(West 2011).  “Health care” means any act
or treatment performed or furnished, or that should have been performed or
furnished, by any health care provider for, to, or on behalf of a patient
during the patient’s medical care, treatment, or confinement.  Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10) (West 2011).  A
hospital is a health care provider, as is its employee or agent acting in the
course and scope of the employment or contractual relationship.  Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(11)(G), (12)(A)(vii),(B)(ii) (West 2011).  

The statute does not include a
definition of “treatment,” so its meaning in this context is one consistent with
the common law. See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(b) (West 2011) (“Any
legal term or word of art used in this chapter, not otherwise defined in this
chapter, shall have such meaning as is consistent with the common law”); cf. Kendrick
v. Garcia, 171 S.W.3d 698, 704 (Tex.App.--Eastland
2005, pet. denied) (“[Section 74.001(b)] essentially restates the rule of
statutory construction that terms in a statute are to be given their plain
meaning”).  The court in Rowntree v. Hunsucker,
815 S.W.2d 779 (Tex.App.--Texarkana 1991), rev’d on other grounds, 833 S.W.2d 103 (Tex.
1992), cited the 1990 edition of Black’s Law Dictionary definition of
“treatment” as “[a] broad term covering all the steps taken to effect a cure of
an injury or disease; including examination and diagnosis as well as
application of remedies.”  815 S.W.2d at
783 (citing Black’s Law Dictionary 1502 (6th ed. 1990));[5]
see Doe v. Univ. of Cincinnati (1988), 42 Ohio App. 3d 227, 230, 538
N.E.2d 419, 423 (quoting same definition from 1979 fifth edition of Black’s Law
Dictionary).  Other courts of appeals
have made use of the definition of “treatment” from Mosby’s Medical Dictionary,
i.e., “the care and management of a
patient to combat, ameliorate, or prevent a disease, disorder, or injury.”  Nexus
Recovery Ctr., Inc. v. Mathis, No. 05-09-0273-CV, 2011 Tex. App. Lexis 974,
at *7 n.3 (Tex.App.--Dallas Feb. 10, 2011, n.p.h.); Ghazali v. Brown,
307 S.W.3d 499, 503 (Tex.App.--Fort Worth 2010, pet.
granted); Tesoro v. Alvarez, 281
S.W.3d 654, 659 (Tex.App.—Corpus Christi 2009, no
pet.) (each quoting Mosby’s Medical Dictionary 1880
(8th ed. 2009)).  The Consent to Medical
Treatment Act defines “medical treatment” as “a health care treatment, service,
or procedure designed to maintain or treat a patient’s physical or mental
condition, as well as preventative care.” 
Tex. Health & Safety Code Ann. § 313.002(6) (West
2010).  

As noted, Chapter 74’s definition of
“health care” includes any act performed, or that should have been performed,
by a health care provider for a patient during the patient’s treatment.  All of the definitions of “treatment” we have
cited include disease diagnosis or prevention. 
Covenant’s heart screening had as its purpose the diagnosis or
prevention of heart disease or disorder in the screening participants.[6]  Although the record does not fully describe
the screening, it is clear it included timed exercise with some monitoring by
Covenant.  It is fair to infer that Linda
Barnett registered before the test, as instructed by Covenant’s
advertisement.  As also instructed, she
fasted for twelve hours before the test.[7]  We have no occasion here to characterize all
the events that formed part of the heart symposium, but we believe the heart
screening, though performed at no cost, must be held to be within the
definition of “treatment.” Acts performed, or that should have been performed,
during the heart screening Linda Barnett sought from Covenant therefore are
within Chapter 74’s definition of “health care.”    

It is the underlying nature of a
claim that determines whether it is a health care liability claim.  Yamada
v. Friend, No. 08-0262, 2010 Tex. Lexis 1012, at *8 (Tex. Dec. 17, 2010)
(citing Garland Cmty.
Hosp. v. Rose, 156 S.W.3d
541, 543 (Tex. 2004)). 
That nature is not shaped by artful pleading.  Id. at *9.  A cause of
action against a health care provider is a health care liability claim if it is
based on a claimed departure from an accepted standard of health care.  A claim alleges a departure from accepted
standards of health care if the act or omission alleged in the complaint is an
inseparable part of the rendition of health care services.  Diversicare General
Partner, Inc., v. Rubio, 185 S.W.3d 842, 848 (Tex. 2005); Buck v. Blum, 130 S.W.3d 285, 290 (Tex.App.--Houston [14th Dist.] 2004, no pet.) (generally cause of action is considered health care
liability claim when based on breach of a standard of care applicable to health
care providers).  Whether the expert
testimony of a medical or health care professional is necessary may be an
important factor in determining whether a claim arises from an inseparable part
of the rendition of health care services. 
Saleh v. Hollinger, No. 05-10-0339-CV, 2011
Tex. App. Lexis 11, at *13 (Tex.App.--Dallas Jan. 4,
2011, pet filed) (citing Diversicare, 185 S.W.3d at 848).  However, the fact that expert testimony may
not ultimately be necessary to support a verdict at trial does not necessarily
mean the claim is not a health care liability claim.  Murphy v. Russell, 167 S.W.3d 835, 838 (Tex. 2005).  The expert report requirement is a threshold
requirement for the continuation of the lawsuit, not a requirement for
recovery.  See id.  

On appeal, the Barnetts
primarily emphasize their assertion Covenant’s employees were negligent through
their failure to properly supervise Linda Barnett’s performance of the
cardio-vascular step test.  That omission
was an inseparable part of Covenant’s heart screening.  See Valley Baptist Med. Ctr. v. Azua, 198
S.W.3d 810, 814 (Tex.App.--Corpus Christi 2006, no
pet.) (act of hospital employee assisting
patient into wheelchair was inseparable part of rendition of medical
services).  If the Barnetts’
claims are based on asserted departures from accepted standards of health care,
they are health care liability claims.  Diversicare, 185 S.W.3d at 848.

The record contains evidence of
guidelines adopted by the health care community for exercise testing like that
conducted by Covenant.  Attached in part
as an exhibit to the Barnetts’ original petition, and
attached also to a pleading filed by Covenant in support of its motion to
dismiss was the step test protocol from the American College of Sports
Medicine’s Guidelines for Exercise
Testing and Prescription.  The
protocol calls for evaluation of the participant for risk factors commonly
associated with coronary artery disease. 
According to the protocol, clearance for participation in the exercise
testing rests largely in the evaluator’s discretion.  For example, the guidelines require the
evaluator to determine the presence of “absolute” and “relative
contraindications” to exercise testing, some of which are specified in two lists
of medical terms.  The guidelines also
call for termination of the step test if the participant asks to stop, or on
the occurrence of such events as angina or angina-like symptoms; a significant
drop or an excessive rise in blood pressure; light-headedness, confusion,
ataxia, pallor, cyanosis, nausea, or cold and clammy skin; failure of heart
rate to increase with increased exercise intensity; physical or verbal
manifestations of severe fatigue; and unusual or severe shortness of
breath.  

We see the Barnetts’
claims that Covenant’s personnel at the symposium failed to watch and attend
Linda Barnett’s performance of the step test as asserting a breach of the
standard of care applicable to health care providers conducting such exercise
testing.  See Buck, 130 S.W.3d at 291 (allegation defendants failed to
properly supervise employee physician essentially was allegation of violation
of standard of care).  And we see such a
claim as one requiring expert testimony of the particulars of the standard
applicable to a step test and the manner in which Covenant’s supervision of
Linda Barnett failed the standard. The Barnetts
contend otherwise, arguing no medical expert is needed to explain how Linda
Barnett’s injury “could have been prevented by simply offering her a steady
hand.”  They also argue, “A medical
school education is not required to realize a middle aged woman who has not
eaten for 12 hours may stumble while performing a step test.”

We disagree that the decision when
and under what circumstances a participant in a cardio-vascular step test should have the kind of close supervision the Barnetts posit is the substance of common knowledge. See Diversicare,
185 S.W.3d at 851 (similar analysis). The American College of Sports
Medicine’s guidelines anticipate that the person conducting the test will
possess sufficient medical competence to evaluate the test participant and make
the medical judgments inherent in the decision whether to continue the
test.  The existence and nature of such
guidelines established by the health care community indicate that a judgment
concerning Covenant’s conduct of Linda Barnett’s step test requires specialized
knowledge, and ultimately support a conclusion the Barnetts’
claims are based on a claimed departure from accepted standards of health
care.  See Garland Cmty. Hosp. v. Rose, 156
S.W.3d 541, 546 (Tex. 2004) (citing promulgation of guidelines governing
hospital credentialing process to support similar conclusion).

To agree with the Barnetts
would effectively reduce the standard of care of a heart screening from health
care professional to ordinary care.  As
did the court in Diversicare, 185 S.W.3d at 853-54, we find such a
result was not intended by the Legislature. 
Because the Barnetts’ claim that Linda Barnett
was injured as a result of poor supervision of the step test is one based on a
claimed departure from an accepted standard of health care, it is a health care
liability claim.  Diversicare at 848.

The Barnetts
contend on appeal that none of the Covenant employees conducting Linda
Barnett’s heart screening were “doctors or nurses; they were not medical care
professionals.”  Because the employees
could exercise no medical judgment, they argue, the claim may not be classified
a health care liability claim.  As
Covenant pointed out at oral argument, the record does not disclose the
qualifications of those conducting Linda Barnett’s screening.  But for a more fundamental reason, we find no
merit to the argument.  Under Chapter 74,
health care is not limited to the actions of doctors and nurses.  See
Marks v. St. Luke’s Episcopal Hosp.,
319 S.W.3d 658, 671-72 (Tex. 2010) (plurality op.) (Johnson, J., concurring) (discussing predecessor act). 
We have already noted that “health care” includes “any act or treatment performed or furnished, or that should have
been performed or furnished, by any
health care provider for, to, or on behalf of a patient during the
patient’s medical care, treatment, or confinement.”  Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10) (West 2011) (emphasis supplied).  And a “health care provider” includes a
hospital as well as its “employee or agent acting in the course and scope of
the employment or contractual relationship.” Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(11)(G), (12)(A)(vii),(B)(ii) (West 2011).  The Barnetts do not
dispute that Covenant is a health care provider nor is it argued the Covenant
employees conducting the test acted outside the course and scope of their
employment.  Thus from a plain reading of
the statute, and solely for the purpose of determining whether the Barnetts’ claims are or are not health care liability
claims, the qualifications of the employees Covenant selected to conduct the
heart screening matter not.

The Barnetts
also argue on appeal Covenant negligently placed the test step too close to the
wall, and such negligence was a proximate cause of Linda Barnett’s injury.  According to the Barnetts,
placement of the step “at an unsafe distance is contrary to common sense, and
is not akin to medical expertise.” 
Components of this, or just about any healthcare procedure, may be
highlighted and particularized as involving conduct measured by ordinary
standards of care.  Yamada, 2010 Tex. Lexis 1012, at *13.  But when, as here, the case presents a health
care liability claim, a plaintiff may not split the claim and on a divided
portion recast the case as one in ordinary negligence.  See
Turtle Healthcare Group, L.L.C. v. Linan, No.
09-0613, 2011 Tex. Lexis 323, at *6-*7 (Tex. April 29, 2011) (per curiam); Yamada at
*13 (citing Diversicare, 185 S.W.3d at 854); Marks, 319 S.W.3d at 669 (Johnson, J.,
concurring) (“when the substance of a patient’s claim for damages comes within
the statutory definition of a health care liability claim, then [Chapter 74]
applies to all the plaintiff’s claims against the health care provider based on
that injury”).  Moreover, a health care
liability claim may arise also from a claimed departure from accepted standards
of safety.  Tex. Civ. Prac. & Rem. Code Ann. § 71.001(a)(13) (West 2011). 
The placement of the aerobic step, for the purpose of conducting the
heart screening, was an integral and inseparable part of the health care
services provided.  If the unsafe
condition of the step caused Linda Barnett’s injury, “the gravamen of the resulting
cause of action is a health care liability claim.”  Marks,
319 S.W.3d at 664.

For these reasons, we sustain
Covenant’s sole issue.

Conclusion

While the Barnetts
pursued the case as one for ordinary negligence, we conclude it constitutes a
health care liability claim.  It is
undisputed the Barnetts did not serve the required
expert report.  The trial court abused
its discretion by denying Covenant’s motion to dismiss.  Covenant asked for its attorney’s fees in its
motion to dismiss, but did not offer evidence of its incurred attorney’s fees
at the hearing on its motion.  Cf. Victoria Gardens of Frisco v. Walrath, 257 S.W.3d 284, 291 (Tex.App.—Dallas
2008, pet. denied) (health care provider prevailing on appeal but not pleading
for attorney’s fees not entitled to remand). 
We reverse the trial court’s order and remand the cause to the trial
court for the limited purposes of determining Covenant’s reasonable incurred
attorney’s fees and costs and entry of an order dismissing with prejudice the Barnetts’ claims against Covenant.  See
Gingrich v. Scarborough, No.
09-09-0211-CV, 2010 Tex. App. Lexis 3139, at *14-*15 (Tex.App.--Beaumont
Apr. 29, 2010, no pet.) (mem.
op.) (after reversing trial court’s denial of motion to dismiss claims against
pharmacy defendants for failure to serve adequate expert report, court remanded
for determination of attorney’s fees despite absence of proof of fees at
hearing); Thoyakulathu v. Brennan, 192 S.W.3d 849, 856 (Tex.App.--Texarkana 2006, no pet.) (remanding
after reversing trial court’s denial of motion to dismiss for failure to serve
expert report).  Cf. Garcia v. Gomez, 319
S.W.3d 638 (Tex. 2010) (remanding “physician’s attorney’s fees claim to the
trial court for further proceedings,” id.
at 643-44, over dissent objecting to giving physician “a second chance to
satisfy his burden of proof,” id. at
645).[8]


 

                                                                                                James
T. Campbell

                                                                                                            Justice

Pirtle, J., concurring
and dissenting.

 











[1] John T. Boyd, Chief Justice (Ret.),
Seventh Court of Appeals, sitting by assignment.





[2] The plaintiffs’ pleadings named as
defendant “Covenant Health System d/b/a Covenant Medical Center and d/b/a
Covenant Heart & Vascular Institute and d/b/a Covenant Heart Institute and
d/b/a Covenant Well Heart Services.”





 

[3]  See
Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West 2008).





[4] Based on argument at the hearing on
Covenant’s motion, it appears the Barnetts’ pursuit
of the case as one for ordinary negligence may have been influenced by the first
opinion in Marks v. St. Luke’s Episcopal
Hosp., which was subsequently withdrawn.  No. 07-0783, 2009 Tex. Lexis 636, at *20 (Tex.
Aug. 28, 2009) (negligence claim based on defectively assembled or maintained
hospital bed was not health care liability claim). 





[5] Later editions of Black’s do not
include the term. 





[6]
The term “screening” is defined
as “[t]he examination of a group of usually asymptomatic individuals to detect
those with a high probability of having or developing a given disease.”  The American Heritage Stedman’s Medical
Dictionary 745 (2002).





[7] So far as we are able to tell, the
record does not explain what aspects of the heart screening required
participants to fast.  





[8] In his dissenting opinion, Chief
Justice Jefferson cited, among other cases, cases under former article 4590i in
which courts of appeals held that nothing in that statute modified the general
rule that a party seeking attorney’s fees must present evidence of attorney’s
fees.  319 S.W.3d at
646, citing, inter alia, Estrello v. Elboar,
965 S.W.2d. 754, 759 (Tex.App.--Fort Worth 1998, no
pet.).  See also Tibbetts v. Gagliardi, 2
S.W.3d 659, 665 (Tex.App.--Houston [14th Dist.] 1999,
pet. denied) (holding trial court erred in awarding attorney’s fees to
physicians in absence of any evidence of attorney’s fees).